# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DARRELL BURRUS, | |
|    Petitioner, | |
| v. | Civil Action No.: SAG-20-2109 |
| WARDEN RONALD S. WEBER, and MARYLAND ATTORNEY GENERAL | |
|    Respondents. | |

## MEMORANDUM OPINION

Petitioner Darrell Burrus has filed a Petition for Writ of Habeas Corpus. ECF 1 (the "Petition"). Respondents are the Warden of Western Correctional Institution and the Maryland Attorney General, who filed a Limited Answer to the Petition asserting that the claims are time-barred. ECF 6. Upon Order of the Court (ECF 9), Respondents filed a Supplemental Answer maintaining that Burrus's claims are time-barred but also contending his claims lack merit. ECF 10. No hearing is required. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, I shall deny the Petition. A certificate of appealability shall not issue.

## Background

Burrus was indicted on October 20, 2010 in Baltimore City on multiple counts in connection with a shooting that resulted in three men being injured. ECF 6-1 at 33. Burrus proceeded to trial by jury in January of 2012. ECF 10-1; 10-2; 10-3; 10-4; 10-5; 10-6; 10-7; 10-8. The jury found him guilty, *inter alia*, of attempted first degree murder and use of a handgun in

the commission of a crime of violence.  ECF 10-8 at 74-78.  On March 12, 2012, Burrus was sentenced to an aggregate ninety-five years' incarceration.  ECF 10-9 at 42.  The Appellate Court of Maryland[1] described the facts as follows:

> Joshua Woods testified that on September 6, 2010, he was at Dana Castor's mother's house for a Labor Day cookout with his cousins, Castor & Marcus Brown, and a friend, "Fat Ral."  Woods testified that at approximately 8:00 p.m. he drove with Castor, Brown, Fat Ral, and his brother, Raymond Green, to pick up another cousin, Cleasia, from the playground at Lafayette and Payson.  It was Woods' testimony that there was a big block party occurring at Lafayette and Payson and when they pulled up and Fat Ral got out, someone started shooting at them.  Woods then drove to Bon Secour Hospital and encountered police officers.  Everyone but Marcus Brown got out and walked into the hospital, but Brown had suffered seven gunshot wounds and was badly injured.  Thereafter, Woods responded to the police station and participated in a photo array procedure with Detective Riker.  Woods did not identify [ Burrus] in court and said he didn't know the people who shot them.
>
> Dana Castor testified that he was at his mother's house for a cookout on the Labor Day in question with his family, including his cousins Marcus Brown, Joshua Woods, Raymond, and Fat Ral. Castor testified that he went to pick up his other cousin in a van with the others, and after making their rounds they got to Lafayette and Payson where the party was happening. Castor said that while waiting for Fat Ral to come back to the van, he saw two males come out of the dark and "shots rang out."  Castor testified that he never saw their faces, observing only that one was "darker," and one was "lighter."
>
> Officer Roderick Henry testified that on September 6, 2010, he was at Bon Secour Hospital when a van pulled up and three occupants stated they had been shot.  The three occupants were Mr. Castor, Mr. Brown, and Mr. Woods.
>
> Frank Sanders, a mobile evidence technician, responded to Bon Secour, took photographs of Messrs. Woods and Castor, and tested their hands for gunshot residue.  Mr. Sanders also visited Mr. Brown in shock trauma, took photographs of him, and conducted gunshot residue tests.  Mr. Sanders responded to a reported shooting at 900 North Payson Street where he recovered .40- and .9-millimeter casings.

---

[1]  At the time Burrus's case was litigated in the Maryland state courts, the Appellate Court of Maryland was named the "Court of Special Appeals" and the Supreme Court of Maryland was named the "Court of Appeals of Maryland."  At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of both courts.  The name change took effect on December 14, 2022.

>Rodney Montgomery, a technician, inspected the victims' vehicle, recovered projectiles, swabs of blood, and fingerprints. The parties stipulated that fingerprint comparisons with [Burrus] and his co-defendant, James Johnson, yielded "no results."
>
>Detective Jonathan Riker was the lead investigator. He interviewed witnesses, including several interviews of Mr. Castor. He testified that, from a photo array, Mr. Castor identified [Burrus] and his co-defendant as the shooters. Detective Michael Lind, who assisted Detective Riker, testified that Mr. Castor was presented with a photo array in accordance with usual protocol, and he then gave a recorded statement. Detective George Cannida testified that he was present during the identification procedure.
>
>At trial, Mr. Castor described his pre-trial interviews with Detective Riker, stating that Detective Riker first showed him a single photo, not an array. Subsequent to the initial identification, he had doubts, and recanted. At trial, he testified that he did not see [Burrus] fire a weapon and was not sure he saw [Burrus] at all on September 6, 2010.
>
>Several other witnesses testified. An examination of the casings revealed that the .9 millimeter bullets were fired from the same weapon, and the .40 caliber bullets were fired from a single, but different, weapon. The State's theory was that [Burrus], using the .9 millimeter weapon, shot Mr. Brown, and [Burrus]'s co-defendant, using the .40 millimeter weapon, shot Mr. Woods.
>
>Mr. Brown recovered from the shooting, but on November 17, 2010, he was shot and killed by the same .9 millimeter weapon that was used in the September 6 shooting. The State's theory was that [Burrus] ordered the "hit" on Mr. Brown. This was based on several recorded telephone calls made by [Burrus] while incarcerated and awaiting trial.

ECF 6-1 at 262-64.

The day after he was sentenced, on March 13, 2012, Burrus filed a counseled Motion for Modification of Sentence to be Held Sub Curia. *Id.* at 185-87. Burrus asked the circuit court to hold the motion in abeyance until future events would justify a hearing and an order of modification. *Id.*

Burrus appealed his conviction and sentence to the Appellate Court of Maryland, asserting two errors: (1) the trial court erred in failing to grant his motion for a mistrial or new trial based on juror misconduct; and (2) the trial court erred in permitting the introduction of certain evidence.

3

The Appellate Court of Maryland affirmed Burrus's conviction and sentence on March 18, 2014. *Id.* at 262-71. The Supreme Court of Maryland denied Burrus's petition for certiorari on July 21, 2014 (*Id.* at 297) and the United States Supreme Court denied his petition for certiorari on November 3, 2014. *Burrus v. Maryland*, 574 U.S. 985 (2014).

Burrus filed a *pro se* petition for post-conviction relief on May 31, 2017 (*Id.* at 320-335), which was supplemented by counsel on June 11, 2018. ECF 6-1 at 336-358. A hearing was held on November 19, 2018. *Id.* at 378.[2] In February, 2019, the circuit court granted post-conviction relief on Burrus's claims that his trial counsel was ineffective for failing to object to a voir dire question about scientific evidence. *Id.* at 376-90. Specifically, the circuit court found that the voir dire question at issue suggested that the jury's only option was to convict, which violated Burrus's right to fair and impartial jury. *Id.* at 381-83. The circuit court vacated Burrus's convictions and ordered a new trial. *Id.* at 389.

The Appellate Court of Maryland granted the state's application for leave to appeal. *Id.* at 391-402; 411. On September 3, 2019, the Appellate Court of Maryland remanded the matter back to the circuit court with instructions to reconsider its ruling in light of *State v. Armstead*, 235 Md. App. 392 (2018). On remand, the circuit court held a hearing on November 6, 2019 (*Id.* at 416) and issued an Order on February 19, 2020, denying Burrus's post-conviction petition. *Id.* at 413-27. The circuit court found that it originally erred in granting relief because Burrus failed to prove that the outcome of his trial would have been different if his trial counsel had objected to the voir dire question. *Id.* at 422-26. The Appellate Court of Maryland denied Burrus's application for leave to appeal on July 9, 2020. *Id.* at 436-37.

---

[2] Respondents did not provide a transcript of the hearing. The citation here is a reference to the hearing in the circuit court's Order and Reasons.

Burrus filed his federal habeas corpus petition in July, 2020. ECF 1. He raises two grounds for relief: (1) ineffective assistance of counsel for failure to object to the improper scientific evidence voir dire question, and (2) the trial court erred by failing to grant his motions for a mistrial and a new trial based on juror misconduct.

## Timeliness

Respondents filed a Limited Answer on October 9, 2020, urging the Court to dismiss Burrus's Petition as untimely. ECF 6. Respondents' Limited Answer advances an argument that Burrus's March 16, 2012 Motion for Modification did not toll the statute of limitations because it was merely a "placeholder," which Burrus asked the circuit court to hold *sub curia*. *Id.* at 20-27. Upon review of the Limited Answer, the Court directed the Respondents to supplement their response and address the merits of Burrus's claims. ECF 9. Respondents filed a Supplemental Answer on November 18, 2021, addressing the merits of Burrus's claims but continuing to argue that his Petition was untimely. ECF 10 at 3.

Respondents advanced the same "placeholder" argument in this Court in the matter of *Maietta v. Gelsinger*, No. PX-18-2185. On November 4, 2020, Judge Xinis issued an Order unequivocally rejecting the merits of Respondents' position:

> The United States Court of Appeals for the Fourth Circuit Court in *Mitchell v. Green* . . . squarely held that sentence modification motions brought pursuant to Md. Rule 4-345 amount to a collateral proceeding which does statutorily toll the applicable limitations period. *See Mitchell v. Green*, 922 F.3d 187, 198 (4th Cir. 2019) . . . .
>
> Respondents . . . move for reconsideration as to the applicability of *Mitchell* to Maietta's petition. Respondents argue that *Mitchell* does not reach Maietta's case because his Rule 4-345 reconsideration motion was no more than a "placeholder" and not a proper application sufficient to toll the limitations period for filing the § 2254 petition. The Court disagrees.
>
> *Mitchell* unambiguously held that a motion to reconsider the state sentence filed pursuant to Maryland Rule 4-345 "tolls AEDPA's limitations period."

> *Mitchell*, 922 F.3d at 195.  In so holding, the Court did not place any limits on this straightforward determination.  It did not parse the intent of the filer as to whether the motion was meant to function as a "placeholder" or filed in earnest on its merits.  Rather, the Court grounded its decision in whether the motion was filed at all.  *Id.*
>
> Even more pertinent to this case, Maietta's Rule 4-345 motion is functionally identical to the motion at issue in *Mitchell*.  Like *Mitchell*, Maietta initially filed the motion and asked that it be held *sub curia*.  Maietta thereafter supplemented the motion with legal and factual support for his requested reduction in sentence.  The petitioner in *Mitchell* similarly requested that his Rule 4-345 motion be held in abeyance.  Indeed, Respondents concede that this is the practice in Maryland—petitioners routinely file Rule 4-345 motions with little detail then request the motion be held *sub curia* so that the petitioner may supplement the filing in advance of any ruling on the merits.  Accordingly, Respondents provide the Court no meaningful grounds to conclude that *Mitchell* does not reach the tolling question here.  And this Court can discern no principled reason to agree with the Respondents' position.

*Maietta*, No. PX-18-2185, ECF 33.  The Court agrees with Judge Xinis's analysis, as well as the identical conclusions reached by Judge Hollander in *Williams v. Maryland Att'y Gen*, ELH 22-cv-75, 2022 WL 2176858 at *4 and Judge Griggsby in *Drummond v. Morgan*, LKG 20-cv-659, 2022 WL 16838857 at *5.  Burrus's Rule 4-345 Motion for Modification, regardless of its characterization, properly tolled the statute of limitations.

28 U.S.C. § 2244(d)(1) sets a one-year time limitation for seeking a writ of habeas corpus "pursuant to the judgment of a State court."  Pertinent to Burrus's claims, the limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  28 U.S.C. § 2244(d)(2), however, expressly excludes from that one-year calculation "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending . . . ."

Burrus's conviction became final when the United States Supreme Court denied certiorari on direct review on November 3, 2014.  Per Maryland Rule 4-345, however, Burrus's March 16,

2012, Motion for Modification remained pending for five years, and thus tolled the one-year statute of limitations until March 16, 2017. Burrus filed his post-conviction petition seventy-six days later, on May 31, 2017. His post-conviction proceedings remained pending until the Appellate Court of Maryland denied his application for leave to appeal on July 9, 2020. Burrus filed his federal habeas petition days later, in July, 2020. Because less than a year passed with no collateral review or post-conviction proceedings pending, Burrus's habeas petition is timely.

## Standard of Review

1. **28 U.S.C. § 2254**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S. 415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is

contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."

8

*Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)."  *Id*. at 379.

### 2. *Ineffective Assistance of Counsel*

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient, and that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors.  *Id*. at 696.

In order for Burrus to obtain relief on his ineffectiveness claims, he must show that the adjudication of such claims at the state court level:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Supp. 1997).  The Act further provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1).

As the Supreme Court held in *Strickland v. Washington*, *supra*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id*. at 698. Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

**Analysis**

1. ***Ineffective Assistance of Counsel***

In his first claim, Burrus contends that his trial counsel was ineffective when he failed to object to the following questions posed to the venire during voir dire:

> Is there any member of this panel who believes that quote, "scientific" unquote evidence must exist in order to convict the Defendant of a crime? If so, please stand.

ECF 10-1 at 52. Burrus raised this claim in his post-conviction petition. ECF 6-1 at 347-353. As noted above, the post-conviction court originally granted relief on this claim, finding:

> The language used in Petitioner's voir dire question is very similar to the question asked in *Charles* [*v. State*, 414 Md. 726, 733 (2010] and *McFadden* [*v. State*, 197 Md. App. 238, 250 (2010)]. The voir dire question suggested that the jury's only option was to convict, whether or not scientific evidence was presented. This suggestive question tainted the venire and deprived Petitioner a fair and impartial jury.

*Id.* at 383. As noted above, the Appellate Court of Maryland instructed the post-conviction court to reconsider its conclusion based on relevant Maryland caselaw on ineffective assistance of counsel. On remand, the post-conviction court determined that Burrus's trial counsel was deficient for failing to object to the improper voir dire question. However, the post-conviction court concluded that Burrus could not demonstrate *Strickland*'s second prong, that the outcome of his trial would have been different if his trial counsel had objected. *Id.* at 413-27. The post-conviction court determined that any residual potential prejudice by the voir dire question was dislodged by the correct statements of law in the jury instructions at the close of the trial. The post-conviction court also noted that the absence of scientific evidence was not critical to the state's establishment of Burrus's involvement in the crime. *Id.* at 423-25.

Burrus offers no reason to suggest that the outcome of the trial would have been different had his trial counsel objected to the scientific evidence voir dire question. Accordingly, the post-conviction court's dismissal of this claim is neither contrary to, nor an unreasonable application of, federal law.

   2. *Juror Misconduct*

In his second claim, Burrus contends that the trial court erred in failing to grant his motion for a mistrial and subsequent motion for a new trial because the juror foreperson engaged in misconduct. On the eighth day of trial and second day of deliberations, the jury foreperson sent a note to the trial judge at 10:34 a.m. ECF 10-8 at 4. The note read (in part):

> [M]eaning no disrespect to the Maryland Court System, but I would like to ask you to review the cases of Asperta versus Oregon, Johnson versus Louisiana with a Supreme Court site, Duncan versus Louisiana, again a Supreme Court opinion, tested the Sixth and Fourteenth Amendment less than unanimous jury verdicts in criminal cases does not violate the due process clause for failure to satisfy the reasonable doubt standard. The mere fact that one juror votes to acquit does not mean that the 11 who vote to convict had ignored their instructions concerning proof beyond a reasonable doubt or that they do not honestly believe that guilt has

11

> thus been proven. Want of jury unanimity does not alone establish reasonable doubt. The Louisiana legal scheme provided for unanimous verdicts in capital/criminal crimes, but for less than unanimous verdicts otherwise and which varies the difficulty of proving guilt with the gravity of the offense. It was designed to serve the rational purposes to facilitate expediting and reducing expense of the administrative justice and does not constitute classification that violates equal protection. Oregon allowed votes of ten to two, Louisiana allowed votes of nine to three. We are at 11 to one.

ECF 10-9 at 5-6 (internal quotations omitted).[3] The note also referred to case citations and law review articles. *Id.* At the time, the jury had reached a verdict as to Burrus's co-defendant, but not as to Burrus. ECF 10-8 at 7.

Burrus's counsel moved for a mistrial on the grounds that one of the jurors had conducted extensive research. *Id.* at 8. Counsel for the state produced a case indicating that the proper procedure would be for the court to individually voir dire the jurors to determine the extent of the outside influence on their ability to properly deliberate. *Id.* at 14-17. The trial judge noted that there is a presumption of prejudice from outside influence on the jury that can be overcome by the prosecution. *Id.* at 17.

The trial court proceeded to individually question each juror, starting with the foreperson. *Id.* at 21-47. The foreperson admitted that he conducted independent research but denied that he discussed the note with any of the other members of the jury. *Id.* at 22-23. However, several jurors told the trial judge that they had discussed the subject of the note either as a group or with the foreperson that morning. *Id.* at 27, 30-31, 34, 35, 37, 40-41, 42-43, 44, 46. All the jurors told the trial judge that they could render a fair and impartial verdict based on the evidence presented and the instructions provided by the court. *Id.* at 21-47. Based on the jurors' assurances that they

---

[3] The note was not read into the record and therefore is not included in the trial transcript. The quoted language is taken from the hearing on Burrus's motion for a new trial.

could render a fair verdict, the trial judge determined that the presumption of prejudice had been overcome and denied Burrus's motion for a mistrial. *Id.* at 47-50.

The trial judge gave the jury a curative instruction about the requirement of unanimity to reach a verdict and the jury continued to deliberate. *Id.* at 52-53. At 5:08 p.m., approximately six and a half hours after the foreperson sent the note to the trial judge, the jury advised the court that it had reached a unanimous verdict. *Id.* at 74.

Burrus renewed his objection to the foreperson's misconduct by asserting a motion for a new trial, which was heard prior to sentencing on March 12, 2012. ECF 10-9. Burrus's counsel argued that Burrus should have received the presumption of prejudice under the circumstances because the foreperson's misconduct was egregious, and it was clear that the research was discussed with other members of the jury. Burrus's counsel also argued that the jury was non-unanimous at the time the note was received and the content of the research would have placed pressure on the holdout to change his or her vote. *Id.* at 3-21. The trial court denied the motion for a new trial, finding that the foreperson's misconduct was not so prejudicial as to justify a new trial. *Id.* at 19-21.

Burrus raised the claim in his direct appeal to the Appellate Court of Maryland. ECF 6-1 at 198-203. The Appellate Court of Maryland found that the juror misconduct was egregious enough to give rise to a presumption of prejudice. Because the jurors did not gain access to information relevant to their role as factfinders, the Appellate Court of Maryland concluded that the trial court did not abuse its discretion in denying Burrus's motion for a mistrial. *Id.* at 264-67.

In *Remmer v. United States*, 347 U.S. 227 (1954), the United States Supreme Court held that when allegations of juror misconduct come to light, the trial court should "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing

13

with all interested parties permitted to participate." ("*Remmer* hearing") *Id.* at 230. *Remmer* also created a rebuttable presumption of prejudice applied to communications or contact between a third party and a juror concerning the matter pending before the jury. *Id.* at 229. In *Barnes v. Joyner,* the Fourth Circuit held that under clearly established federal law, a presumption of prejudice must be applied, and a hearing must be held when a defendant presents a genuine allegation of communication or contact between a third party and a juror concerning the matter pending before the jury. 751 F.3d at 246 (2014).

Burrus's trial judge conducted a *Remmer* hearing and assumed a presumption of prejudice. After questioning the jurors, the trial judge found that the presumption had been rebutted. The Appellate Court of Maryland concluded on direct appeal that the type of misconduct engaged in by the foreperson was not subject to a presumption of prejudice because it was not relevant to the jurors' roles as factfinders. Fourth Circuit precedent suggests that the trial judge correctly conducted a *Remmer* hearing and presumed prejudice under the circumstances. *See U.S. v. Lawson*, 677 F.3d 629 (4th Cir. 2012) (holding on direct appeal that prejudice was presumed when juror conducted internet research on Wikipedia for definition of terms which were elements of offense).

However, *Lawson* engages in a lengthy discussion about the lack of consensus among the federal circuits about the continued viability of the *Remmer* presumption considering newer Supreme Court precedent. *Lawson*, 677 F.3d at 641-44. Thus, *Lawson* illustrates why the Appellate Court of Maryland's conclusion cannot be deemed contrary to or an unreasonable application of federal law. *See White v. Woodall,* 572 U.S. 415, 422 n.3 (2014) ("diverging approaches to [a particular] question" in the Courts of Appeal "illustrate the possibility of fairminded disagreement"); *Carey v. Musladin*, 549 U.S. 70, 76–77 (2006) (concluding that the

fact that "lower courts have diverged widely" on the question presented "[r]eflect[s] the lack of guidance from this Court" and supports a finding that "the state court's decision was not contrary to or an unreasonable application of clearly established federal law").

Even if the Appellate Court of Maryland's conclusion could be construed as contrary to federal law, Burrus's juror misconduct claim fails. On habeas review, Burrus must prove that the error had a "substantial or injurious effect or influence in determining the jury's verdict." *Barnes*, 751 F.3d at 252 (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). The trial court thoroughly questioned the jurors during the *Remmer* hearing. No juror provided any response that indicated that the verdict would be impacted by the foreperson's research or that a verdict would be rendered in the absence of unanimity. Burrus's argument that the lone holdout may have been pressured to change his or her vote based on the foreperson's actions is speculation that cannot support a conclusion that the misconduct had a "substantial or injurious effect" on the verdict. Thus, Burrus has failed to show that he is entitled to habeas relief on his juror misconduct claim.

## Conclusion

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. ___, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See*

28 U. S.C. § 2253(c)(2). Burrus may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

      A separate order denying the Petition for Writ of Habeas Corpus and declining to issue a certificate of appealability follows.

April 12, 2023                                        /s/
Date                                                      Stephanie A. Gallagher
                                                           United States District Judge